## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **ALEXIS NOVICK, individually and** | ) | |
| **as administrator of the ESTATE of** | ) | |
| **RUTH ANN MENZ, decease,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-02259** |
| | ) | |
| **VILLAGE OF BOURBANNAIS, an** | ) | |
| **Illinois municipal corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This matter comes before the Court on Defendant Village of Bourbannais's (the "Village"); Defendant Chief Jim Phelps ("Chief Phelps"); Defendants Officer Garcia ("Garcia"), Officer Cavander ("Cavander"), Officer Bertrand ("Bertrand") (hereinafter the "Defendant Officers"); and Defendants John and Jane Does, unknown officers, agents, servants, or employees of the Bourbannais Police Department ("B.P.D.") (collectively, "Defendants") Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Municipal Liability Claims (hereinafter "Motion to Bifurcate") pursuant to Federal Rule of Civil Procedure 42(b). (Doc. 33). For the reasons set forth below, Defendants' Motion to Bifurcate and Stay the Discovery and Trial of Plaintiff's Municipal Liability Claims is DENIED with leave to renew after the close of discovery and resolution of any dispositive motions.

## I.    FACTUAL BACKGROUND

Plaintiff filed a Complaint against Defendants alleging constitutional violations and related Illinois state law claims arising from an incident that occurred on July 10, 2022, in the home of Ruth Menz ("Ruth") in Bourbannais, Illinois. (Doc. 1). Before this date, a criminal order of protection ("COP") was issued against Ruth's husband, Larry Menz Jr. ("Larry"), after B.P.D. first charged him with the domestic battery of Ruth. (*Id.* at ¶ 16). Larry was charged a second time with domestic battery by B.P.D. while the first charge was pending and the COP was in place. (*Id.* at 17). The underlying incident occurred while the COP was active, and the two charges were pending. (*Id.* at ¶ 18).

Larry Menz, Sr. ("Larry Sr."), Larry's father, owned and operated a towing company with a contract to provide towing services to the Village and B.P.D. (*Id.* at 13). Larry Sr., Larry, and B.P.D. maintained a professional and personal relationship. (*Id.* at ¶¶ 14, 21). Based on this relationship, B.P.D. knew of the lengthy history of domestic disturbances and Larry's propensity for domestic violence against Ruth within her home. (*Id.* at ¶¶ 15, 19). Plaintiff asserts that Chief Phelps told Defendant Officers that, for these domestic disturbances, there was a policy to seek the help of Larry Sr. (*Id.* at ¶ 39).

On July 10, 2022, a neighbor called the police to report that Larry was violently dragging a bloodied Ruth out the front door by her face and neck. (*Id.* at ¶¶ 12, 25, 27). Defendant Officers arrived five minutes later and attempted to communicate with Larry. (*Id.* at ¶ 31, 35). He refused to communicate or cooperate with Defendant Officers, walked into his garage, and closed the door. (*Id.* at ¶¶ 35-37). Defendant Officers made multiple attempts to knock on Ruth's door, but Larry refused to answer, and someone locked the

doors to the house from inside. (*Id*. at ¶ 37). Instead of arresting Larry for violating the order of protection, Chief Phelps advised Defendant Officers that it was the policy and/or prudent course of action to contact Larry Sr. and seek his help to handle this type of situation. (*Id*.). Defendant Officers called and spoke to Larry Sr. while they were still at the home. (*Id*. at ¶¶ 41-45). Larry Sr. agreed to "handle it," and Chief Phelps instructed Defendant Officers to leave the scene. (*Id*. at ¶¶ 45, 48). The following morning, Defendant Officers arrived at the home to find Ruth deceased inside, murdered by Larry, who had subsequently committed suicide. (*Id*. at ¶¶ 51, 53). After this discovery, Chief Phelps made a public statement that the situation was handled in accordance with proper Village policy. (*Id*. at ¶ 54).

## II.    PROCEDURAL BACKGROUND

On November 29, 2022, Plaintiff filed the instant Complaint alleging the following claims against Defendants: Count I—Section 1983 Civil Rights Claim; Count II—Failure to Intervene; Count III—Monell Custom Policy and Practice; Count IV—Indemnification, brought pursuant to state law; Count V—Gross Negligence/Recklessness, brought pursuant to state law; Count VI—Willful and Wanton Conduct, brought pursuant to state law; Count VII—Wrongful Death, brought pursuant to the Illinois Wrongful Death Act; Count VIII—Violation of the Illinois Domestic Violence Act; Count IX—Violation of Due Process; Count X—Violation of Equal Protection; and Count XI—Survival Act, brought pursuant to state law.

On January 30, 2023, Defendants filed their Partial Motion to Dismiss Counts I, II, III, IX, and X of the Complaint, pursuant to Rule 12(b)(6), on the basis that these counts

failed to state claim upon which relief may be granted. (Doc. 17). On February 28, 2023, Plaintiff filed her Response to Defendants' Partial Motion to Dismiss. (Doc. 19). On August 15, 2023, at oral argument on Defendants' Partial Motion to Dismiss, Plaintiff moved to withdraw Count II for failure to intervene, which the Court accepted. (*See* 8/15/2023 Minute Entry #SP-1, 1:48:13;  Doc. 30 at 6 n. 2). On September 29, 2023, the Court issued its Opinion on the Motion which granted dismissal of the substantive due process claim contained in Count I but denied Defendants' Motion as to the remaining claims, including the *Monell* claim.

On October 13, 2023, Defendants filed its Answer and Affirmative Defenses. (Doc. 31). The Village asserted immunity under § 1983 and 745 ILCS 10/2-102 & 10/2-103 of the Tort Immunity Act. (*Id.* at 32, 34). The remaining Defendants asserted the following affirmative defenses: (1) qualified immunity; (2) comparative fault; (3) reduction of liability under a contributory negligence theory pursuant to 735 ILCS 5/2-1116; and (4) immunity pursuant to 745 ILCS 10/2-103, 2-201, 2-202, 2-205 and 745 ILCS 10/4-102, 4-107 of the Tort Immunity Act. (*Id.* at 32-34). On October 31, 2023, Plaintiff filed a Motion to Strike Affirmative Defenses seeking to strike all nine defenses. (Doc. 32).

On November 3, 2023, Defendants filed a Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Municipal Liability Claims pursuant to Federal Rule of Civil Procedure 42(b). (Doc. 33). On November 11, 2023, Plaintiff filed her Response to Defendants' Motion to Bifurcate. (Doc. 36). On January 29, 2024, Magistrate Judge Long denied Plaintiff's Motion to Strike Affirmative Defenses on all defenses except for

Defendants' contributory negligence defense as they failed to sufficiently plead the defense by omitting supporting facts.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The Seventh Circuit has emphasized that only one of the above criteria, prejudice or judicial economy, needs to be satisfied for a court to grant bifurcation "as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). The district court has considerable discretion in deciding whether to bifurcate claims. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Although bifurcation of *Monell* claims has become common, it remains the exception and not the rule due to its risk for additional delay. *Trexler v. City of Belvidere*, No. 20-CV-50113, 2021 WL 493039, at *1 (N.D. Ill. Feb. 10, 2021); *see also Holt v. Lewsader*, No. 18-CV-2169, 2021 WL 4084123, at *1 (C.D. Ill. Apr. 7, 2021). Because this decision is fact-specific, the court must perform a cost-benefit analysis of bifurcation based on the circumstances of each case. *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). This balance requires courts to consider the similarity of the issues, the discovery posture, and the potentiality that the issues will require separate evidence. *Wells v. Coker*, No. 08-CV-3302, 2014 U.S. Dist. LEXIS 23308, at *8 (C.D. Ill. Feb. 25, 2014) (citation omitted). Bifurcation is disfavored in cases where evidence intersects significantly because limiting instructions can mitigate prejudice. *EEOC v. Wal-Mart Stores, Inc.*, 38 F.4th 651, 660 (7th

Cir. 2022) (citing *Houskins*, 549 F.3d at 495-96). Federal Rule of Civil Procedure 26(d) further permits courts to stay discovery on *Monell* claims. *Trexler*, 2021 WL 493039, at *1 (citation omitted).

## IV.    ANALYSIS

Defendants argue that bifurcation of the *Monell* claim and a stay of the *Monell* discovery best serve the Rule 42 interest of convenience, economy, expedition, and avoidance of undue prejudice. Specifically, Defendants argue that bifurcation (1) will prevent burdensome and unnecessary discovery; (2) prevent prejudice to the Defendant Officers; (3) prevent prejudice to the Village; and (4) will not prejudice Plaintiff.

### A. Judicial Economy

The Seventh Circuit analyzes Rule 42(b)'s convenience and expediency factors under judicial economy. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Judicial economy will only favor Defendants if bifurcation eliminates *Monell* discovery and trial. *William Reber, LLC v. Samsung Electronics America, Inc.*, 220 F.R.D. 533, 538 (N.D. Ill. 2004) (citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 623 (N.D. Ill. 2000)). Defendants argue two points to support bifurcation under a theory of judicial economy: (1) the *Monell* discovery in this case is, and will continue to be, burdensome and unreasonable and (2) a trial on *Monell* may not even occur if Defendant Officers are not found individually liable.

#### 1. Burdensome and Unreasonable Discovery

Defendants allege Plaintiff's *Monell* discovery requests are unduly burdensome and unreasonable, because although requests for domestic violence and order of

protection reports have been narrowed, Plaintiff still requests hundreds, if not thousands, of police incident reports. While conceding the requests have been cut down, Defendants claim the parties have unsuccessfully attempted to condense the scope of the discovery requests through multiple Rule 37 conferences. Further, Defendants insist the discovery requests are not only costly and likely to delay resolution but disproportionate to the needs of the case. Defendants do not provide any support for their assertions that Plaintiff's *Monell* discovery requests are, and will continue to be, burdensome and unreasonable. *See Trexel*, 2021 WL 493039, at *4 ("[A] party's assertion that discovery would be overly burdensome is typically accompanied by a showing, such as an affidavit or other reliable evidence, supporting the assertion."). Defendants merely provide various examples of Plaintiff's discovery requests up to this point, some of which have presumably been provided to Plaintiff, with an assertion that Rule 37 conference attempts have been less than fruitful to Defendants. "[B]roadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery." *Id*. at *4. Defendant's bare assertion that Plaintiff's discovery requests will continue to be burdensome and unreasonable, without more, does not weigh in favor of bifurcation.

Additionally, Defendants argue the *Monell* discovery requests are irrelevant to Defendant Officers and, therefore, the requests are burdensome and unreasonable at this juncture. Defendants do not indicate how Plaintiff's requests are irrelevant to Defendant Officers when Plaintiff is asserting Defendant Officers' conduct is due to policies or practices in place by Defendants. Plaintiff argues that Defendants have been less than

amenable to comply with discovery, delaying responses for months and providing insufficient ones when they do respond. Plaintiff contends that the *Monell* claim against the Village is "inextricably intertwined" with those of the Defendant Officers such that bifurcation would result in duplicative discovery.

In her *Monell* claim, Plaintiff must ultimately prove that a policy or custom of the Village directly caused the injury suffered which can be demonstrated in one of three ways.[1] *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 1951 (2018) ("It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of official municipal policy.") (citation omitted). The Court has already held that Plaintiff failed to allege the existence of a written policy in this case. Therefore, Plaintiff must ultimately show either "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or . . . an allegation that . . . a person with final policymaking authority" caused the alleged injury. *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

Plaintiff claims the Village, through Chief Phelps as Chief of Police, had a policy to contact Larry Sr. for all disturbances related to domestic violence between Larry and Ruth, which was the impetus for the deprivation of Ruth's rights. Plaintiff identifies three separate instances, specific to Larry and Ruth, where Larry Sr. was called to handle a

---

[1] In its Opinion filed on September 29, 2023, this Court held that Plaintiff had properly alleged an underlying constitutional violation in both Plaintiff's Procedural Due Process and Equal Protection claims. (Doc. 30 at 24).

domestic violence report instead of officers. Additionally, Plaintiff insists that Chief Phelps's public statement regarding the night in question indicates that several situations with comparable facts may have been resolved similarly. However, mere anecdotal evidence cannot establish a widespread practice. *Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015). This results in the type of burdensome but likely reasonable discovery requests that made the Defendants move for bifurcation.

Defendants note that bifurcation generally aids in a quicker resolution of individual claims as it allows the parties to hold off on any burdensome and unreasonable discovery of policies or practices used by a municipality. This is generally correct. *Medina v. City of Chicago*, 100 F.Supp.2d 893, 895 (N.D. Ill. 2000) ("Bifurcation of *Monell* issues in § 1983 actions frequently expedites the disposition of the case, since the resolution of the claims against the individual officers may end the entire …, after less complex discovery and a less complex trial."). However, courts in this circuit have consistently held that bifurcation of *Monell* claims can actually hinder judicial economy by causing increased discovery disputes about whether a plaintiff's request is for *Monell* claims or not. *See Trexel*, 2021 WL 493039, at *4. Therefore, Defendants' insistence falls flat as it seems likely Plaintiff will use the same witnesses and evidence to support her claims against both the Defendant Officers and the Village.

The Seventh Circuit recognizes that courts and parties benefit from limiting duplicative discovery in § 1983 claims. *Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015). The crux of every one of Plaintiff's claims is an alleged custom or practice in which B.P.D., when alerted to a domestic disturbance, must defer to the abuser's father

when the department has an existing business relationship with the abuser's family. (Doc. 36 at 6) (stating that B.P.D.'s "policies are literally the basis of the complaint."). Plaintiff alleges this policy—fueled by the Defendants' relationship with Larry and Larry Sr.—caused the Defendant Officers to leave the scene, resulting in gross negligence, constitutional violations, and a violation of the Illinois Domestic Violence Act. Plaintiff contends this action equates to willful and wanton conduct supporting a Wrongful Death and Survival Act claim. This centralized theory of liability indicates evidentiary overlap is likely to occur. *Walmart Stores, Inc.*, 38 F.4th at 660 (citing *Houskins*, 549 F.3d at 495-96). Defendants have failed to provide evidence, bare assertions notwithstanding, that bifurcation is warranted in furtherance of judicial economy. Without more, the Court finds that bifurcation based on judicial economy does not weigh in favor of Defendants.

### 2. Individual Liability Requirement

In addition to stressing that bifurcation is the only preventative measure to avoid extensive *Monell* discovery, Defendants presume that a trial on *Monell* liability will ultimately be unnecessary if Defendant Officers are not held liable for any constitutional violations. They argue the *general* rule is that a municipality, such as the Village, cannot be held liable if none of the Defendant Officers are found to have deprived Plaintiff of a constitutional right. To determine whether the resolution of a municipality's *Monell* claim depends on the resolution of the individual claims, courts analyze how the right was violated, how the municipality was potentially liable, and any defenses asserted. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010).

Plaintiff's claims against Defendant Officers' are centered on her allegation that their failure to act was partially due to a policy shifting the Defendant Officers' duty into the hands of Larry Sr. An allegation against a municipality for indirectly violating a plaintiff's rights through an employee requires the municipality to have actual knowledge. *LaPorta*, 988 F.3d at 986-87 (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)). This requires the plaintiff to show action deliberately indifferent to known or obvious consequences, *Brown*, 520 U.S. at 407, which usually involves showing a pattern unless the violation was an apparent outcome. *Id.* at 409; *see also Orozco v. Dart*, 64 F.4th 806, 826 (7th Cir. 2023) ("A constitutional violation must be a 'blatantly obvious' consequence of inaction for single-incident [*Monell*] liability . . . .") (quoting *Bohanon v. City of Indianapolis*, 46 F.4th 669, 677 (7th Cir. 2022)).

Defendants reliance on a string of caselaw[2] dealing with *Monell* claims arising from affirmative acts for the presumption that Plaintiff must establish Defendant Officers' liability before she can prevail on her *Monell* against the Village is misplaced. *Powell*, *Heller*, and *Tesch* involve excessive force claims, while *Wells* and *Matthews* dealt with unlawful arrests in addition to excessive force. In cases where all claims against individual officers have been based on excessive force, courts have held that when an officer is found not liable due to qualified immunity, the municipality cannot be held liable. *Powell*, at * 6 (citing *Grant ex. rel. Estate of Ware v. City of Chicago*, No. 04-C-2612, 2006 U.S. Dist. LEXIS 5497, at *3 n. 2 (N.D. Ill. Feb. 10, 2006)). District courts in this Circuit

---

[2] *Powell*, at *1; Wells, at *2-3; *City of Los Angeles v. Heller*, 475 U.S. 796, 797 (1986); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 705 (7th Cir. 2012); *Tesch v. Cnty. of Green Lakes*, 157 F.3d 465, 470 (7th Cir. 1998).

have generally held that granting bifurcation in excessive force cases is usually appropriate as the probability of finding the individual not liable under qualified immunity is low. *Id*. at *8 ("Thus, this case presents the typical case in which bifurcation is appropriate to avoid inconsistent verdicts."). As none of the above claims have been alleged here, these cases are not instructive on whether bifurcation is appropriate.

Additionally, the purported bright-line rule from *Heller* that Defendants rely upon has been squarely rejected by the Seventh Circuit. In *Heller*, the Supreme Court held the trial court correctly dismissed excessive force and arrest without probable cause claims against the municipality after the jury found the individual officer not liable. *Heller*, 475 U.S. at 798-99. The Court found no liability for the municipality because the officer did not plead any affirmative defenses or qualified immunity, and thus the jury must have found that the actions in question themselves did not violate the Constitution. *Id*. at 798. In *Thomas*, 604 F.3d 293, the county defendant, relying on *Heller*, made a similar argument to the one Defendants make here. The Seventh Circuit considered the imposition of such a strict rule, which would mandate individual officer liability before a municipality can ever be held liable for damages under *Monell*, to be an "unreasonable extension of *Heller*." *Thomas*, 604 F.3d at 305. Rather, the Seventh Circuit interpreted the actual rule to be much narrower, holding that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas*, 604 F.3d at 305 (emphasis in original). To determine whether a municipality's liability is dependent on its officers, the district court must look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth. *Id*.

In this case, it is plausible that a jury could find that the Defendant Officers were protected under qualified immunity because they were not deliberately indifferent but, instead, could not adequately respond based on the alleged policy. *See Thomas*, 604 F.3d at 305. Although acknowledging the *Thomas* exception exists, Defendants contend it is not applicable here because an inconsistent verdict will occur unless the case is bifurcated. Defendants fail to provide any justification for this assertion.

The Court finds that *Monell* discovery will occur in some fashion. Defendants' arguments on the likelihood of a *Monell* trial being unnecessary are not persuasive at this point in the litigation. To the extent that Defendants argue that the *Monell* discovery will be unduly burdensome and unreasonable, and likely unnecessary because Defendant Officers must first be found liable, this motion is denied.

### B. Prejudice

As Defendants have not shown that bifurcation will aid in judicial economy, they must "demonstrate that [they] will be greatly prejudiced by a single trial in order for this Court to allow bifurcation of a case." *William Reber, LLC*, 220 F.R.D. at 538. Prejudice may occur in two ways: (1) complex issues may confuse the jury, or (2) significant delay in the proceedings. *Id.* at 536.

Defendants contend that prejudice to Defendant Officers is likely to occur as evidence presented for Plaintiff's *Monell* claim will confuse the jury and cause it to consider such evidence when determining Defendant Officers' liability. Further, the Village Defendant argues the Defendant Officers will be prejudiced because they could be held liable for punitive damages, whereas the Village cannot. Finally, the Village

Defendant contends it will also be prejudiced if bifurcation is denied because, if *Monell* evidence is presented, and one of the Defendant Officers is found liable, the jury might presume the Village is liable on the *Monell* claim. As previously stated, substantial overlap between evidence is likely.

Defendants' concerns are premature at this stage of proceedings because there is no indication that potential prejudice cannot be mitigated through limiting instructions, motions *in limine*, and the Federal Rules of Evidence. *See Love v. City of Chicago*, 362 F.Supp.3d 867, 875 (N.D. Ill. 2019) ("The Court has at its disposal means to address potential prejudice at trial…."); *William Reber, LLC*, 220 F.R.F. at 536 (citing *Corrigan v. Methodist Hosp.*, 160 F.R.D. 55, 57 (E.D. Pa. 1995) ("[P]otential jury confusion . . . can be remedied with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury."). The Court finds it too early to determine whether evidence prejudicial to Defendant Officers or the Village Defendant will be presented.

Defendants do not address the potential prejudice to Plaintiff caused by Defendants' inability to meet discovery deadlines thus far. Delay is prejudicial to Plaintiff if it is unreasonable. *See Real*, 195 F.R.D. at 623. A plaintiff is entitled to choose what claims to pursue against a defendant. *Cadle v. City of Chicago*, No. 15-C-4725, 2015 WL 6742070, at *3 (N.D. Ill. Nov. 2, 2015). When a plaintiff's claims are enmeshed, as they are here, bifurcation delays the inevitable. *Bonds v. City of Chicago*, No. 16-CV-5112, 2018 WL 1316720, at *4 (N.D. Ill. Mar. 14, 2018). Plaintiff alleges Defendant Officers, in causing the injury at issue, acted pursuant to a policy established by Chief Phelps as a final policy maker on behalf of the Village. The Court finds Plaintiff's claims are sufficiently

enmeshed, whereby bifurcation will only cause an unreasonable delay to resolution, which is prejudicial to Plaintiff. Accordingly, the Court denies Defendants' Motion as any potential prejudice to Defendants is outweighed by the prejudice to Plaintiff.

In summary, at this stage of the litigation process, the Court finds bifurcation will not serve judicial economy nor avoid prejudice. It is too early in discovery to accurately determine whether any evidence Plaintiff plans to introduce will be prejudicial to the Defendant Officers or the Village Defendant; and whether any further *Monell* discovery will be so extensive as to slow down resolution of the Defendant Officers' case. As in *Wells*, rulings on dispositive issues in this case may clarify the extent of evidentiary overlap and potential for prejudice.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Municipal Liability Claims (Doc. 33) is denied with leave to renew after the close of discovery and resolution of any dispositive motions.

ENTER: May 1, 2024

/s/ Colleen R. Lawless
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE